In the matter of JOHN H. MILLER, Insolvent.

November 27, 1889.

**Insolvency—Fraudulent Disposition of Property.**—The testimony taken in this case—which was a proceeding under the terms of the proviso found in section 10, c. 148, Laws 1881, (the insolvency act)—having been examined, it is *held* sufficient to have justified the conclusion of the court below that the insolvent had fairly accounted for nearly all of the property which appellants, his creditors, alleged had been fraudulently concealed, incumbered, or disposed of with intent to cheat and defraud his creditors.

**Same—Money Lost in Gambling— "Dealing in Options."** — From an examination of the insolvent under oath and in this proceeding, it appeared that he had lost large sums of money, the cash receipts of his busi-

ness, in dealing in grain "options," after he knew his insolvent condition. *Held*,—conceding, for the purposes of the case, that option dealing is gambling, as claimed by appellants,—that this disposition of his property was not fraudulent, under the circumstances, and was not made with intent to cheat or defraud his creditors.

Appeal by Jasper B. Tarbox and others, creditors of John H. Miller, an insolvent debtor, from an order of the district court for Washington county, *McCluer*, J., presiding, directing that the assets of the insolvent be distributed among those of his creditors who should file releases as required by law.

*Richardson, Markham & May*, for appellants.

*Marsh & Nethaway*, for respondent.

COLLINS, J. Upon the hearing of an order to show cause why the proceeds of the estate of the insolvent, Miller, should not be distributed by his assignee among such of his creditors as filed releases of their claims in the manner provided by Laws 1881, c. 148, § 10, these appellants, creditors of the insolvent, filed a petition and complaint alleging that he had fraudulently concealed, or fraudulently incumbered or disposed of, his property, with intent to cheat and defraud his creditors. Subsequently such testimony as the appellants saw fit to produce was taken before a referee, and returned to and considered by the court. From a finding thereafter made, that the allegations of the complaint were not proved, and an order of said court that those creditors only who filed releases should participate in the assets, said petitioners appeal. The only witness examined was the insolvent, who testified that the shrinkage in his estate while he was in business (only about six months) was occasioned by losses while dealing in grain "options," and by selling his merchandise at less than cost. In this manner nearly all the shrinkage was accounted for to the satisfaction of the trial court. From an examination of the testimony we are of the opinion that there was sufficient to justify the result reached. It stands admitted by the testimony of the insolvent witness that he continued to invest the daily cash receipts of his business in options long after he realized himself to be an insolvent, and that he lost at least $1,000 in this way while in that condition. And the appellants claim, upon this admission and their

contention that option dealing is gambling pure and simple, that the insolvent should be held, as a matter of law, to have fraudulently disposed of his property with the intent mentioned in the statute. Conceding, for the purposes of this discussion, that dealing in options is gambling in its most vicious and unadulterated form, we quite agree with the court below, on this point, that it appeared from the testimony that this conduct of the insolvent was not induced by any intent or attempt to defraud his creditors, but, on the contrary, with an illusory hope that he might be successful, thereby improving his financial condition and standing. While all must admit that this was misconduct and misbehavior, it was not of the fraudulent character mentioned by the proviso in section 10, *supra,* which proviso must be given the meaning ordinarily belonging to the words used. *In re Gazett,* 35 Minn. 532, (29 N. W. Rep. 347.) The money lost in this illegitimate way was not fraudulently concealed by the debtor, nor was it disposed of with an intent to cheat or defraud those to whom he was indebted. It is this fraudulent intent which must be found to exist as a part of the unlawful transaction, and be so declared by the court, before the order demanded by appellants can be granted. Our statute does not prohibit, in terms, (as did the United States bankruptcy act of 1867,) the discharge of an insolvent, if it appear that he has lost any part of his property in gaming subsequent to the passage of the law. If this be a substantial defect in the statute, the remedy is in the hands of the law-makers, not with the courts. Finally, it should be borne in mind, when examining or citing authorities from the federal courts upon the subject now under consideration, that, by the express and extremely severe provisions of the act of 1867, a discharge was refused for very many reasons not covered by our insolvency law of 1881. See section 5110, Rev. St. U. S. 1878.

Order affirmed.