In the Matter of THEODORE SHOTWELL and others, Insolvents.

June 2, 1890.

**Insolvency — Fraudulent Concealment, etc., of Property — Intent of Debtor.**—To constitute a fraudulent concealment, incumbering, or disposal of property by a debtor with intent to cheat and defraud his creditors, within the meaning of section 10 of the insolvent law of 1881, so as to entitle creditors to share in the assets without filing releases, the act must have been committed with an actual corrupt and dishonest intent to cheat and defraud creditors. The mere fact that the debtor may have retained and used property which he had no legal right to retain or use, and that the effect of such act may have been a fraud on creditors in the sense that it deprived them of the benefit of assets to which they were equally entitled, is not, in the absence of such corrupt and dishonest intent, sufficient to entitle the creditors to share in the assets of the debtor without filing releases.

**Same—Fraudulent Intent not Found.**—The finding of the court construed, and *held* not to amount to a finding of a fraudulent concealment or disposal of property with intent to cheat and defraud creditors, and hence insufficient to support the order appealed from.

**Same—Refusal to Disclose—Dishonest Disclosure.**—While a dishonest disclosure, or a refusal to make a full disclosure, by an insolvent debtor may justify the conclusion that he has fraudulently concealed or disposed of his property with intent to cheat and defraud his creditors, yet it is not the dishonest disclosure, or the refusal to disclose, but only the fraudulent concealment or disposition of his property, which is made the ground for permitting creditors to share in the assets without executing releases.

Appeal by the insolvents from an order of the district court for Hennepin county, *Lochren,* J., presiding, directing a distribution of the estate among the creditors without the filing of releases.

*Selden Bacon,* for appellants.

*Shaw & Cray,* for respondents.

MITCHELL, J. In June, 1888, the appellants here executed, pursuant to the provisions of the "Insolvent Law," (Laws 1881, *c.* 148,) a general assignment of all their non-exempt property (both partnership and individual) for the benefit of their creditors. In January,

1889, one of the creditors of the firm, in behalf of itself and other cred·itors, seasonably petitioned the court to order, pursuant to section 10 of the act, that the property of the assignors be distributed among their creditors without their filing releases. The matter was referred to a referee to take and report the evidence, and from the evidence reported by him the court found the following facts: "(1) That the insolvents, just before making the assignment, and in contemplation thereof, by mutual agreement, each took the sum of $600 of the partnership moneys then on hand, to be used by himself for his own anticipated personal needs, and caused the same to be charged against himself upon the books of the partnership, and has kept and used the same, and has turned over no part thereof to the assignee; that such taking was done with the knowledge of the book-keeper of the firm, and not secretly, *and with no other intent or purpose than to provide for the anticipated wants of said insolvents and their families immediately following such assignment, and until other means of subsistence could be attained or provided.* (2) That, upon the examination of the insolvents before the referee in this matter, divers questions were propounded to each of them by counsel for the petitioners, as to whether, upon a prior examination before the municipal court, he had not testified to certain matters concerning his participation in making an alleged statement to an agent of a commercial agency in January, 1888, concerning the then financial standing of the firm, representing that it then had assets to the extent of $288,000 over and above all liabilities; that they and each of them refused to answer any and all such questions, acting therein upon the advice of their counsel." Upon these findings of fact the court made an order directing that the creditors be permitted to receive their respective dividends from the estate of the insolvents, without making or filing releases of their claims.

Much of the examination before the referee, and much of the argument of counsel here, has reference to the alleged discrepancy between the financial condition of the firm as shown by their statement in January, 1888, and as shown by the schedules to the assignment made in the following June; the petitioners claiming that the comparison showed a large amount of assets unaccounted for. As the

court has made no finding upon this, it is neither necessary nor proper for us to inquire whether the evidence was or was not sufficient to establish what petitioners claim for it. The order of the court below must stand or fall exclusively upon the findings as made.

The here material part of the insolvent law is section 10, which, after providing that only those creditors shall share in the estate of the debtor who have filed releases of their claims, contains the following: "*Provided, however*, that when any creditor of such insolvent debtor * * * alleges, by complaint made to the judge, * * * that such insolvent debtor has fraudulently concealed or fraudulently incumbered or disposed of any of his property *with the intent to cheat and defraud his creditors*, such judge" (after notice) "may hear such legal evidence as he may deem pertinent, relating to *such* fraudulent concealment, incumbrance, or disposal; * * * and after such hearing said judge may, in his discretion, order or direct that all of said debtor's property and assets, not exempt by law, be distributed among his creditors, * * * upon their filing such releases, or without their filing releases as aforesaid." The language of the last part of this proviso is quite peculiar. But it certainly cannot mean that the judge shall hear evidence merely for amusement, and then decide the matter according to his own arbitrary caprice. What we think it must mean is that, if the petitioner's allegations against the debtor are proved, he shall grant the petition, otherwise deny it.

Two questions are therefore presented: (1) What constitutes a fraudulent concealment, incumbering, or disposal of property by the debtor, with intent to cheat and defraud his creditors, within the meaning of the statute? and (2) Do the facts stated in the first finding of the court constitute such a fraudulent concealment or disposal; or, otherwise stated, does the finding amount to a finding of such a fraudulent concealment or disposal?

In *Re Gazett*, 35 Minn. 532, (29 N. W. Rep. 347,) it was held that the words, "with intent to cheat and defraud," must be given the meaning ordinarily belonging to them, and therefore a mere preference of creditors by a debtor was not a fraudulent disposal of his property, within the meaning of the statute, although in violation of its policy, and the effect of it to deprive other creditors of their just

share of the debtor's estate. Again, in *Re Miller*, 42 Minn. 96, (43 N. W. Rep. 840,) it was held that the debtor's losing money in gambling in wheat options was not a fraudulent disposition of property with intent to cheat and defraud his creditors, within the meaning of section 10, because, although the act may have been morally wrong or even illegal, and the effect of it to waste the debtor's estate to the injury of his creditors, yet the act was not committed with the actual intention to cheat and defraud creditors, but for the purpose of making anticipated gains by the speculation; that the intention to cheat and defraud must be found to exist before an order can be made allowing creditors to participate in the debtor's estate without filing releases. And again, in *Re Welch, supra*, p. 7, it is said that the application of creditors should be denied, unless there has been a fraudulent concealment, disposal, or incumbering of property with intent to cheat and defraud creditors. It is true that this is but a repetition of the words of the statute, but the connection in which the statement was made indicates clearly the meaning which we then attached to them. These decisions at least imply, if they do not amount to an express holding, that the statute refers to actual fraud, as distinguished from fraud in law, and that, to bring an act of concealing or disposing of property within its purview, it must have been committed by the debtor with the actual intent and purpose of cheating and defrauding his creditors; that it is not enough that the act is illegal, and that the effect of it might be to deprive creditors of what they were entitled to, and hence operate as a constructive fraud upon them. And it seems to us that the language of the statute is too clear and explicit to admit of any other construction. Indeed, to hold otherwise would amount to rejecting and disregarding the last clause together. "Fraud," in its broadest sense, includes all acts or omissions which involve a breach of legal duty which are injurious to the rights of others; and, in contemplation of a court of equity, many acts constitute "fraud," in this broad sense of the word, which do not involve any actual intention to defraud. Many assignments for the benefit of creditors at common law, admitted to have been made without any actual dishonesty of purpose as against creditors, have been set aside on the ground of fraud; that

is, legal fraud. And under the late federal bankrupt act there were 10 different and distinct acts of omission or commission which were grounds for refusing the bankrupt his discharge, the law making or treating them as frauds upon creditors, although many of them did not necessarily involve either moral turpitude or actual dishonest intention. But our insolvent law recognizes but one ground for refusing a debtor his release, and that is actual fraud—*dolus malus*—committed by a fraudulent disposition of property, "with intent to cheat and defraud creditors." So careful has the legislature been that it should not be extended by implication, that it has emphasized and repeated the language so that there might be no misunderstanding of its meaning. The word "intent," referred to an act, denotes a state of mind with which the act is done, and the word "defraud" is to be understood in its natural and popular sense; and, that this word might not be misunderstood, there is coupled with it the word "cheat," which, as popularly used, is still more pronounced in its significance. Hence it is not enough to bring an act within the statute that the disposition of property is unlawful or unauthorized, and that the effect of it is to defraud creditors, in the sense that it deprives them of what they are entitled to. A debtor might, through ignorance of the provisions of the exemption laws, and without any dishonest motive, retain property which in fact is not exempt. The effect of this would be a fraud on creditors. But it would hardly be contended that this would be a fraudulent concealment or disposition of property with intent to cheat and defraud creditors, within the meaning of this statute. It was never its intention to deprive an insolvent debtor of his release on any such grounds. See *Rugely* v. *Robinson*, 19 Ala. 404, 413. To bring a case within the statute, the act complained of must have been committed with the actual corrupt and dishonest design or purpose of cheating and defrauding. Of course, we do not wish to be understood that this corrupt and dishonest intention may not be inferred from the acts themselves.

Applying this construction of the statute to the case at hand, we think that the trial judge's first finding of fact is insufficient to support his order, for the reason that it neither in terms nor in equiva-

lents finds that this money was taken and used by the debtors "with intent to cheat and defraud their creditors." He does find that they took the $600 apiece, and have used it, and have not turned it over to the assignee. That they intended to do what they did, viz., take the money, is, of course, self-evident; and it may be assumed for the purposes of this case that they had no legal right to do so, and that the effect of this was a legal fraud on creditors, in the sense that it deprived them of assets of their debtors to which they were entitled. But the judge not only omits to find that they did the act with intent to cheat and defraud their creditors, but he affirmatively finds that they took the money *with no other intent or purpose* than to provide for the anticipated wants of their families temporarily, and until other means for subsistence and livelihood could be provided. This finding, both in what it omits and what it contains, is peculiarly significant, coming, as it does, from a judge who never indulges in loose or inaccurate language, but who always knows exactly what he wishes to say, and thoroughly understands how to express it clearly, and without either addition or diminution. If he had intended to find the fact of an actual intention to cheat and defraud, he would have done so in no uncertain language.

It seems to us that the finding, and the order based upon it, proceed upon the theory that, if the insolvents intentionally took and retained the money, (as they did,) and if they had no legal right to do so, (as we shall assume they had not,) and consequently the creditors were deprived of what legally belonged to them, then the act amounted to a fraudulent disposition of property with intent to defraud and cheat their creditors, regardless of the actual intention or purpose of the debtor. We think the judge's memorandum, which we may take as the construction which he places upon his own language, supports us in this view. And while it is the sufficiency of the finding as made, and not what finding the evidence would have justified, with which we have now to do, yet we may fairly read this finding in the light of the evidence on which it is based as furnishing some aid in ascertaining what construction is to be put on its language, and the view of the law which the court adopted in framing it. The insolvents were large wholesale merchants, who had been doing a busi-

ness amounting to nearly a million and a half of dollars a year. They had partnership assets in the neighborhood of $700,000, which they were about to assign and turn over for the benefit of their creditors. None of them had a homestead, and they had substantially no individual property, exempt or non-exempt, and no money. Each of them had a family dependent upon him, and they were without any means whatever, even of temporary support. In this condition of things, before executing the assignment, each of them took out of the firm $600 for the temporary support of themselves and families until they could provide some other means of subsistence. They did it openly and not secretly, and charged themselves with the money on the firm books, where both creditors and assignee could see it. Within a few days, at least within a very short time, and so far as appears before they had spent the money, they informed some of the creditors, including the petitioner in these proceedings, of what they had done. The assignee also knew of the fact within some 10 days after the assignment was executed; and yet neither assignee nor creditor ever made any demand on them to return the money, or made any objection to their having taken it, until it was urged on this hearing as a ground for denying them the benefit of releases from participating creditors. While it is undoubtedly true that it would be just as unlawful for a debtor with large assets to fraudulently dispose of $600 of his property as it would be in the case of one with small assets, and that the disposal of $10 with intent to cheat and defraud creditors might be as good a ground for denying a debtor his discharge as if it was $10,000, yet all these circumstances are relevant upon the question of the intent or motive with which the act was done; and in this case the evidence was certainly not so conclusive as necessarily to lead to the conclusion that there was an actual dishonest intent to cheat and defraud creditors, and evidently the learned judge did not feel justified in finding the existence of any such intent. The finding is not sufficient to sustain the order.

Little need be said as to the second finding, as it is clearly insufficient. While it is true, as held in *Re Rees*, 39 Minn. 401, (40 N. W. Rep. 370,) a dishonest disclosure by a debtor, or his refusal to

make a full disclosure upon an examination, may justify a conclusion that he has made a fraudulent disposition of his property, although there is no direct evidence of it; yet it is not a false disclosure, or a refusal to disclose, but a fraudulent disposition of property, which the statute makes a ground for an order allowing creditors to participate in the debtor's estate without filing releases. This is sufficient to dispose of the second finding.

But an examination of the record shows that the refusal of the debtors to answer the questions before the referee is entitled to but little weight. The refusal was not arbitrary, but under the advice of counsel, who were perhaps not entirely without excuse for suspecting that the questions were not wholly directed to the matter involved in the examination. The witnesses were not compelled to answer any question which counsel might see fit to propound to them, but were entitled to the ruling of the court on that point, and, in analogy to the old chancery practice of demurrer to the question, if a witness refuses to answer a question before a referee the party propounding it should have it certified to the court for its decision, and if he fails to do this the question will be considered waived. In the present case the petitioners took no steps to obtain the ruling of the court on the propriety of these questions, but on the hearing on the report of the referee the debtors themselves offered to answer the questions if the court should rule that they ought properly to do so, which offer was refused by the petitioners, who thus persisted in abandoning or waiving their interrogatories. It is also worthy of notice that the entire testimony of the witnesses before the municipal court, which had been reduced to writing, was introduced in evidence on this examination, so that the petitioners had all that they could have obtained by the answers to their questions.

Order reversed, and new hearing granted.